# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT MICHAEL PETERSON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:23-cv-00684-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 18, 22, 23) |

## I.

## INTRODUCTION

Brett Michael Peterson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the administrative law judge erred by failing to provide clear and convincing reasons to reject his symptom testimony.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 7, 9, 10.)

1

## II.

2

## BACKGROUND

3    **A.    Procedural History**

4    Plaintiff protectively filed an application for a period of disability and disability insurance

5    benefits and an application for supplemental security income on August 29, 2017.  (AR 90.)

6    Plaintiff's applications were initially denied on November 27, 2017, and denied upon

7    reconsideration on March 7, 2018.  (AR 119-23, 124-28, 131-35, 137-40.)  Plaintiff requested and

8    received a hearing before Administrative Law Judge Scot Septer ("the ALJ").  Plaintiff appeared

9    for a hearing on November 21, 2019.  (AR 29-65.) On December 6, 2019, the ALJ issued a decision

10   finding that Plaintiff was not disabled.  (AR 10-24.)  On August 13, 2020, the Appeals Council

11   denied Plaintiff's request for review.  (AR 1-3.)

12   On October 30, 2020, Plaintiff filed a complaint in the Eastern District of California seeking

13   judicial review of the final decision of the Commissioner.  (AR 826-28.)  On July 20, 2021, at the

14   stipulation of the parties, the action was remanded for further proceedings.  (AR 836-37.)

15   On remand, Plaintiff appeared for a telephonic hearing on May 18, 2022.  (AR 756-88.)  The

16   ALJ issued a decision on June 29, 2022, finding Plaintiff was not disabled.  (AR 727-45.)  On

17   March 16, 2023, the Appeals Council denied Plaintiff's request for review.  (AR 721-23.)

18   **B.    The ALJ's Findings of Fact and Conclusions of Law**

19   The ALJ made the following findings of fact and conclusions of law as of the date of the

20   decision, June 29, 2022:

21   • Plaintiff meets the insured status requirements of the Social Security Act through June

22   30, 2017.

23   • Plaintiff has not engaged in substantial gainful activity since August 29, 2017, the

24   alleged onset date.

25   • Plaintiff has the following severe impairment: degenerative disc disease of the lumbar

26   spine, status post fusion.

27   • Plaintiff does not have an impairment or combination of impairments that meets or

28   medically equals the severity of one of the listed impairments.

2

1      • After careful consideration of the entire record, the ALJ found that Plaintiff has the

2      residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b)

3      and 416.967(b).  The claimant can lift and carry 20 pounds occasionally and 10 pounds

4      frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an

5      8-hour workday.  He is frequently able to climb ramps and stairs, and is occasionally

6      able to climb ladders, ropes and scaffolds.  The claimant is frequently able to push and

7      pull with his lower extremities, bilaterally, and is frequently able to balance and kneel.

8      The claimant is occasionally able to crawl, crouch and kneel, and should not work in

9      environments exposing him to unprotected heights or machinery with dangerous,

10     moving mechanical parts.

11     • Plaintiff is unable to perform any past relevant work.

12     • Plaintiff was 29 years old, which is defined as a younger individual age 18-44, on the

13     alleged disability onset date.

14     • Plaintiff has at least a high school education and is able to communicate in English.

15     • Transferability of job skills is not material to the determination of disability because

16     using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is

17     "not disabled," whether or not Plaintiff has transferable job skills.

18     • Considering Plaintiff's age, education, work experience, and residual functional

19     capacity, there are jobs that exist in significant numbers in the national economy that

20     Plaintiff can perform.

21     • Plaintiff has not been under a disability, as defined in the Social Security Act, from

22     August 29, 2017, through the date of this decision.

23  (AR 733-45.)

24                                  **III.**

25                     **LEGAL STANDARD**

26  **A.**    **The Disability Standard**

27       To qualify for disability insurance benefits under the Social Security Act, a claimant must

28  show he is unable "to engage in any substantial gainful activity by reason of any medically

1   determinable physical or mental impairment[2] which can be expected to result in death or which has

2   lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

3   423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to

4   be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc.

5   Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in

6   assessing whether the claimant is disabled are:

7   
8      Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

9      Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

10
11     Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

12
13     Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

14
15     Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

16

17  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

18  on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

19  claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of

20  proof from step one through step four.

21      Before making the step four determination, the ALJ first must determine the claimant's

22  RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971,

23  at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations"

24
25  [2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

26  [3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.
27  Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

28

1 and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1);

2 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are

3 not severe.   20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p,

4 available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion,

5 but a legal decision that is expressly reserved for the Commissioner.   See 20 C.F.R. §§

6 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for

7 determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

8 residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

9      At step five, the burden shifts to the Commissioner, who must then show that there are a

10 significant number of jobs in the national economy that the claimant can perform given her RFC,

11 age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d

12 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

13 ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry,

14 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-

15 step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical

16 testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala,

17 53 F.3d 1035, 1039 (9th Cir. 1995)).

18      **B.     Standard of Review**

19      Congress has provided that an individual may obtain judicial review of any final decision

20 of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

21 determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

22 the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

23 Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

24 the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

25 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

---

27 [4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

5

1   evidence which, considering the record as a whole, a reasonable person might accept as adequate

2   to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting

3   Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson

4   v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential

5   clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek,

6   139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a

7   preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland),

8   993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v.

9   Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse

10  the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56.  Moreover, the burden

11  of showing that an error is not harmless "normally falls upon the party attacking the agency's

12  determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

13      Finally, "a reviewing court must consider the entire record as a whole and may not affirm

14  simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,

15  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

16  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

17  review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th

18  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

19  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

20  for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

21  the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

22  400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**DISCUSSION AND ANALYSIS**

25  Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons to

26  reject his symptom testimony regarding his disabling level of pain.  (Pl.'s Motion for Summary

6

1  Judgment ("Mot.") 12,[5] ECF No. 18.)  Plaintiff asserts that the ALJ summarized his testimony

2  submitted to the Commissioner and his hearing testimony, however, the ALJ did not provide any

3  substantive discussion or analysis of what symptoms or testimony the ALJ was accepting or

4  rejecting or what activities the ALJ found consistent or inconsistent with any specific allegations

5  of functional limitations.  Plaintiff states the ALJ then used the boilerplate statement regarding

6  consideration of the evidence, that Plaintiff's medically determinable impairments could reasonably

7  expected to cause the alleged symptoms, but his statements regarding the intensity, persistence, and

8  limiting effects of these symptoms are not entirely consistent with the medical and other evidence

9  in the reason for the reasons explained in the decision.  (Mot. at 13.)

10         Plaintiff argues that the ALJ then went on to summarize the medical record, the treating,

11  consultative and reviewing medical opinion evidence and states why the opinions were found to be

12  persuasive or unpersuasive without any substantive discussion or analysis of Plaintiff's symptom

13  evidence.  Plaintiff contends that the ALJ cherry picked a single statement from Dr. Kwock's

14  testimony, that Plaintiff consistently reported an inability to stand and walk long distances which is

15  supported by his lumbar spine impingement and mild to moderate objective findings.   The

16  remainder of the testimony only addresses the medical opinion without any specific symptom

17  evidence being addressed.  Plaintiff argues that the medical record standing alone cannot serve as

18  a basis for rejecting symptom testimony.  (Mot. at 14.)

19         Defendant counters that the ALJ pointed to multiple physical examinations that documented

20  largely normal findings and argues that contradiction with the medical record is sufficient by itself

21  to reject a claimant's testimony.  Defendant asserts that the ALJ reasonably relied on these largely

22  normal objective findings to discount Plaintiff's pain allegations.   (Def.'s Responsive Brief

23  ("Opp.") 5, ECF No. 22.)  Defendant asserts that the ALJ also discussed Plaintiff's response to

24  treatment and that he was prescribed narcotic pain patches and other medications that were helpful

25  and kept him stable.  Defendant argues that the ALJ reasonably found that Plaintiff's positive

26  response to treatment undermined his pain allegations.  (Opp. at 6.)

27

28  [5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
CM/ECF electronic court docketing system.

1    Defendant also argues that the ALJ found that Plaintiff's testimony conflicted with his

2  symptom reports, such as his ability to sit or drive conflicting with his ability to drive ten miles to

3  doctor's appointments; he needed help with personal care from his mother at times but he and his

4  mother both stated he had no problems with personal care; and despite alleging extreme physical

5  limitations he was able to work as a landscaper for about two months in 2020.  (Opp. at 6.)

6  Additionally, Defendant argues that seven medical opinions all agreed that Plaintiff maintained the

7  ability to perform a range of light work, or in other words that he was more functional than he

8  alleged.  (Opp. at 7.)  Defendant asserts that the ALJ need not perform a line by line exegesis of a

9  claimant's testimony or draft dissertations when denying benefits and the ALJ's findings were

10  sufficiently specific to allow the court to conclude that the ALJ did not arbitrarily discredit

11  Plaintiff's testimony.  (Opp. at 7-8.)  Defendant contends that substantial evidence supports the

12  ALJ's credibility determination and Plaintiff is offering an alternative view of the record.  (Opp. at

13  9.)

14    Plaintiff replies that Defendant is offering post hoc analysis to which cannot remedy the

15  ALJ's error.  (Pl.'s Reply ("Reply") at 2.)  Plaintiff argues that it is hardly clear and convincing

16  when the Court has to attempt to piece together the ALJ's reasoning as to what the ALJ's

17  symptomology determination was, as to what specific testimony the ALJ is accepting and what

18  specific testimony the ALJ is rejecting, and the coordinating evidence that either supports or

19  discounts that specific testimony.  (Reply at 3.)

20    **A.    Legal Standard**

21    A claimant's statements of pain or other symptoms are not conclusive evidence of a

22  physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn,

23  495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other

24  non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether

25  a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin,

26  759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant

27  must produce objective medical evidence of an impairment that could reasonably be expected to

28  produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80

1  F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering,

2  "the ALJ may reject the claimant's testimony about the severity of those symptoms only by

3  providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266,

4  1277 (9th Cir. 2020) (citations omitted).

5        If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other

6  limitations is unreliable, the ALJ must make a credibility determination citing the reasons why

7  the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and

8  what testimony undermines the claimant's complaints.  In this regard, questions of credibility and

9  resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue,

10  574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

11        In addition to the medical evidence, factors an ALJ may consider include the location,

12  duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms;

13  the type, dosage, effectiveness or side effects of any medication; other measures or treatment used

14  for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily

15  activities, work record, or an unexplained failure to pursue or follow treatment—as well as

16  ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal

17  contradictions in the claimant's statements and testimony, and other testimony by the claimant

18  that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014);

19  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d

20  1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as

21  a whole, including objective medical evidence; the claimant's representations of the intensity,

22  persistence and limiting effects of her symptoms; statements and other information from medical

23  providers and other third parties; and any other relevant evidence included in the individual's

24  administrative record.  SSR 16-3p, at *5.

25        **B.    Analysis**

26        The ALJ must provide sufficient reasoning to allow the court to perform its own review,

27  because "the 'grounds upon which an administrative order must be judged are those upon which

28  the record discloses that its action was based.' "  Lambert, 980 F.3d at 1277 (quoting Treichler v.

1    Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)).  The ALJ is required to

2    "specifically identify the testimony [from a claimant] she or he finds not to be credible and ...

3    explain what evidence undermines that testimony."  Id.

4        The ALJ considered the testimony of Plaintiff, his mother, and Dr. Kwock and went on to

5    state that Plaintiff's medically determinable impairments could reasonably be expected to cause the

6    alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and

7    limiting effects of these symptoms are not entirely consistent with the medical evidence and other

8    evidence in the record for the reasons explained in this decision.  (AR 738.)  "But this 'boilerplate

9    statement' by way of 'introductory remark,' which is 'routinely include[d]' in ALJ decisions

10    denying benefits, did not 'identify what parts of the claimant's testimony were not credible and

11    why.' "  Lambert, 980 F.3d at 1277 (quoting Treichler, 775 F.3d at 1103).

12        Here, the ALJ went on to discuss the medical evidence and the opinions in the record but

13    did not identify how the objective evidence is inconsistent with Plaintiff's symptom testimony.

14    The finding that Plaintiff's testimony is not credible "must be sufficiently specific to allow a

15    reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

16    grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  Brown-Hunter v.

17    Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th

18    Cir. 1991)).  Here, the ALJ discussed the medical evidence, but general findings are not sufficient,

19    "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

20    complaints."  Brown-Hunter, 806 F.3d at 493 (quoting Reddick v. Chater, 157 F.3d 715, 722 (9th

21    Cir.1998)).

22        The ALJ made the conclusory statement that Plaintiff's statements concerning the intensity,

23    persistence and limiting effects of these symptoms are not entirely consistent with the medical

24    evidence and other evidence in the record for the reasons explained in this decision, (AR 738), and

25    failed to identify specifically which of Plaintiff's statements were found not to be credible and why.

26        1.      Positive Response to Treatment

27        Defendant argues that the ALJ discussed Plaintiff's positive response to treatment.  A

28    condition that can be effectively controlled with medication is not disabling for the purposes of

1 determining eligibility for Social Security Insurance benefits.  Warre v. Commissioner of Social

2 Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

3          The ALJ considered the following records in the opinion.

4          Following his 2014 surgery, Plaintiff began pain management therapy for his chronic back

5 pain that consisted of morphine, Percocet, and tramadol but his pain persisted.  (AR 344, 467, 739.)

6 On September 26, 2016, Plaintiff was seen for a medication refill and reported that he was taking

7 Norco which was somewhat effective in relieving his pain.   (AR 596, 739.)

8          On March 9, 2017, Plaintiff was seen for a refill of his Percocet and reported that his pain

9 was improved on his medication.  His pain went from a 10/10 to 6/10 with medication and the relief

10 lasted five to six hours.  (AR 636-37.)   Plaintiff was taking Baclofen, Gabapentin, and Percocet.

11 (AR 638.)

12          Plaintiff was seen by Dr. Tan on December 28, 2017, and reported good relief of his

13 symptoms with his two prior surgeries, but after his last surgery his pain came back after about

14 three months.  He is taking gabapentin and Percocet for pain, and they do help some.  His pain is

15 located in the low back with radiation into the bilateral leg, much worse on the right side.  He rated

16 his pain as 5-9/10 and gradually getting worse.  (AR 354, 740.)

17          Plaintiff underwent an uncomplicated posterior spine fusion in March of 2018 and continued

18 to take his pain medication.  (AR 740.)  On May 8, 2019, Plaintiff reported that the butmas patch

19 helps him for about 72 hours and after that pain is present.  (AR 715, 740.)

20          The ALJ found that Plaintiff continued to endorse low back pain throughout 2020, but his

21 pain medication was never increased.  (AR 740.)  However, the records cited do not support the

22 finding.  Plaintiff was seen on January 13, 2020, for a medication refill and stated that his pain was

23 constant at 6-10/10 and he needed his pain medication to control it and allow him to do his activities

24 of daily living and his medications were refilled.  (AR 1206-07.)  On May 15, 2020, Plaintiff's

25 medications were refilled.  (AR 1208.)  On June 8, 2020, Plaintiff reported worsening pain, and a

26 BTP medication was increased to every two to three days as needed for severe low back pain.   (AR

27 1209.)  On September 17, 2020, Plaintiff was seen for a medication refill and his mediation was

28 refilled.  (AR 1212.)  On November 3, 2020, Plaintiff was seen complaining of an anxiety attack

11

1  and wanted to restart medication and therapy.  He was prescribed duloxetine and alprazolam.  (AR

2  1213.)

3          Plaintiff had a phone consultation for medication refills on February 10, 2021, and on May

4  17, 2021, and reported that he was stable on his medication.  (AR 741, 1214, 1242.)  However, the

5  May 17, 2021, appointment was addressing his anxiety medication.  (AR 1242.)

6          While the records support that Plaintiff improved after his first two surgeries, the records

7  cited do not demonstrate that Plaintiff received good pain control on his medications.  Rather

8  Plaintiff's pain returned after his first and second surgery and he continued to complain of severe

9  pain.  Finally, the ALJ did not specify how Plaintiff's improvement on medication was inconsistent

10  with his testimony.

11          2.      Activities of Daily Living

12          Defendant also argues that the ALJ found that Plaintiff's activities conflicted with his

13  symptom reports.  "An ALJ may also consider whether the claimant engages in activities

14  inconsistent with the alleged symptoms."  Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).

15  Ninth Circuit caselaw demonstrates that activities of daily living may be grounds for discounting

16  allegations that an impairment is so severe it is totally debilitating, even if such activities are not

17  directly transferrable to a work setting.  See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir.

18  2012), superseded by regulation on other grounds (noting "the ALJ may discredit a claimant's

19  testimony when the claimant reports participation in everyday activities indicating capacities that

20  are transferrable to a work setting … Even where those activities suggest some difficulty

21  functioning, they may be grounds for discrediting the claimant's testimony to the extent that they

22  contradict claims of a totally debilitating impairment.") (internal citations omitted); see also Fair v.

23  Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's

24  allegations were inconsistent with activities of personal care, shopping, chores, riding public

25  transportation, and driving); Burch, 400 F.3d at 680 (finding the ALJ properly discounted the

26  claimant's allegations where the claimant's activities suggest higher functionality, including caring

27  for personal needs, cooking, cleaning, shopping, and interacting with family).

28          Defendant argues that the ALJ discussed that Plaintiff alleged needing help with personal

1  care from his mother at times but that he and his mother both stated he had no problems with personal

2  care.  (Opp. at 6.)  However, the ALJ did not find that Plaintiff stated he needed help with personal

3  care for his mother at times.  The ALJ found that in September 2017, Plaintiff reported that his pain

4  prevented him from getting dressed.  In March of 2018, Plaintiff claimed that dressing, bathing,

5  shaving, cooking, and using the toilet caused him pain.  (AR 736.)  In September of 2021, Plaintiff

6  reported he had no problems with personal care.  (AR 737.)  The ALJ made no finding that Plaintiff

7  alleged he needed help with his personal care.

8         Defendant also argues that while Plaintiff alleged extreme physical limitations generally, the

9  ALJ explained that Plaintiff worked as a landscaper for two months in late 2020.  The ALJ stated,

10         During the May of 2022 telephonic hearing, the claimant testified he quit his job
       landscaping due to back pain (Hearing Transcript).  He was mowing lawns and lifting
11         20 pound bags when he injured his lower back, which increased his pain and radiating
       to his bilateral legs.  He reported the pain was consistent and worsening.  The claimant
12         was prescribed pain medication for his back, which made the pain manageable.  He
       also underwent surgery which initially improved his pain, but the claimant testified
13         it is worse now and radiates to his feet, causing tingling in his toes.  He had difficulty
       sleeping and tosses and turns frequently.
14

15  (AR 737.)

16         While the ALJ did address that Plaintiff worked as a landscaper in considering whether he

17  had engaged in substantial gainful activity, the ALJ never addressed Plaintiff's working in 2020 in

18  relation to his alleged impairments.  Rather, the ALJ noted that Plaintiff had worked as a landscaper

19  and stopped working due to his injuries, took pain medication, and had three back surgeries.  In

20  evaluating the opinion, the Court is constrained to review the reasons asserted by the ALJ.  Connett,

21  340 F.3d at 874 ("It was error for the district court to affirm the ALJ's credibility decision based on

22  evidence that the ALJ did not discuss.")

23         The ALJ did note that at the April 21, 2021, consultative examination, Plaintiff complained

24  of back pain resulting in three surgeries, reduced mobility, constant back pain, and difficulty

25  standing and sitting, but also noted that he functions independently, cooks, does some limited

26  household chores, laundry, and watches television.  (AR 738, 1223, 1224.)  However, he did not link

27  this to any testimony by Plaintiff that was inconsistent.

28  ///

13

3. Inconsistent statements

Defendant argues that the ALJ noted that Plaintiff stated he was unable to sit for more than ten minutes, but also stated that he drove 10 miles to his doctor's appointments. (Opp. 6.) While Defendant argues this as an activity, the Court considers whether this is an internal contradiction in Plaintiff's testimony. The ALJ noted that in the September 27, 2017 exertion questionnaire, Plaintiff alleged that his pain prevented him from sitting longer than 10 minutes. (AR 235, 736.) However, in the same report, Plaintiff stated that he could drive a car to his doctor's appointment that was ten miles away. (AR 236, 736.) But the ALJ never linked these two statements together as being inconsistent. Rather, the ALJ just set forth Plaintiff's responses in the questionnaire.

4. Conclusion

The ALJ erred by failing to set forth clear and convincing reasons to reject Plaintiff's symptom testimony. Plaintiff seeks remand for further proceedings.

The Court has the discretion to remand a case for either an award of benefits or for additional evidence. Smolen, 80 F.3d at 1292. The remand should be for "an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id.

In this instance, it is not clear that Plaintiff would be entitled to benefits. The medical opinion evidence suggests Plaintiff retains the capacity to do at least sedentary work, and Plaintiff was able to work in landscape for two months in 2020 which contradicts his testimony that his pain precludes him from work activity. Accordingly, the Court finds that this matter should be remanded for further proceedings.

**V.**

**CONCLUSION AND ORDER**

In conclusion, the Court finds that the ALJ erred by failing to provide specific clear and convincing reasons to reject Plaintiff's symptom testimony.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is

14

1  GRANTED and this matter is remanded back to the Commissioner of Social Security for further

2  proceedings consistent with this order.  It is FURTHER ORDERED that judgment be entered in

3  favor of Plaintiff Brett Michael Peterson and against Defendant Commissioner of Social Security.

4  The Clerk of the Court is directed to CLOSE this action.

5

6  IT IS SO ORDERED.

7  Dated:   **July 3, 2024**

UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28